IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 9, 2007 Session

## JAMIE LOU HANELINE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Decatur County**
**No. 01CR013     C. Creed McGinley, Judge**

**No. W2006-01116-CCA-R3-PC  - Filed April 27, 2007**

The petitioner, Jamie Lou Haneline, appeals the Decatur County Circuit Court's denial of his petition for post-conviction and error coram nobis relief. He contends that he is entitled to post-conviction relief because he received the ineffective assistance of counsel and that he is entitled to error coram nobis relief based upon newly discovered evidence. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Lloyd R. Tatum, Henderson, Tennessee, for the appellant, Jamie Lou Haneline.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Hansel Jay McCadams, District Attorney General; and Jerry W. Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

This case relates to the petitioner's conviction for rape of a child and resulting thirty-eight-year sentence. On direct appeal, this court summarized the facts underlying the crime as follows:

> K.G., the victim in this case, testified that she first met the Defendant when she was eleven years old. The twenty-three year old defendant was a friend of K.G.'s mother's boyfriend. In February of 2000, shortly after they met, the Defendant began to flirt with K.G., and he asked her to have sex with him. However, their sexual intimacy did not begin at this point. Although the Defendant moved

to Pennsylvania for a period of a few months, their relationship resumed in August when the Defendant returned. At this point in time, K.G. was twelve years old. K.G. testified that, on September 9, 2000, she needed school supplies from a Wal-Mart store. The Defendant offered to take K.G. to the store, which he did. However, when they left Wal-Mart, the Defendant took K.G. to his residence, a mobile home that he shared with his grandfather, Byron Bean. K.G. testified that the Defendant "snuck" her into the mobile home after Mr. Bean went to bed. She stated that the Defendant took her to his bedroom, flirted with her, and had sex with her twice. In addition, K.G. performed oral sex on the Defendant when he asked her to. The Defendant used a condom because "he was afraid [she would] get pregnant." After this incident, the Defendant took K.G. home.

On September 23, 2000, K.G. was attending a birthday party at the house of her friend, Amy Cole. The Defendant picked her up from the party at around 8:00 p.m. K.G. testified that they drove around for a while, after which the Defendant took her to his mobile home. Again, K.G. waited outside until Mr. Bean went to bed; then the Defendant took her to his bedroom. In the bedroom, K.G. and the Defendant watched television and had sexual intercourse again. The Defendant used a condom on this occasion as well. Early the next morning, the Defendant took K.G. back to Amy Cole's house.

With respect to the incident on September 23, 2000, Amy Cole testified that the Defendant picked K.G. up from the birthday party after dark. After a few hours, the Defendant returned K.G. to the house, where she spent the rest of the night.

K.G. testified that, a few days later, on approximately September 30, 2000, the Defendant unexpectedly came to her house. K.G. was there alone. She stated that she and the Defendant had sex on her bed on this occasion.

Some time after this last incident, the Defendant returned to K.G.'s house. K.G.'s grandfather, who was at the house with K.G., refused to allow her to leave with the Defendant. K.G. became upset with her grandfather and attempted to commit suicide by taking a bottle of pain medicine. She was taken to the hospital, where her stomach was pumped. This experience prompted K.G. to disclose to her mother her relationship with the Defendant.

The jury found the Defendant guilty of the child rape that occurred on September 23, 2000. It found him not guilty of the conduct alleged to have occurred on September 9 and September 30.

This court affirmed the petitioner's conviction and sentence. See State v. Jamie Lou Haneline, No. W2002-01773-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 515, at **2-4 (Jackson, May 30, 2003), perm. to appeal denied, (Tenn. Oct. 27, 2003).

On October 21, 2004, the petitioner filed a petition titled "PETITION FOR POST-CONVICTION RELIEF AND WRIT OF CORAM NOBIS." In the petition, he argued that he was entitled to post-conviction relief because he received the ineffective assistance of trial counsel when his attorney failed to file a pretrial motion to sever the offenses. He also claimed that he was entitled to error coram nobis relief based upon newly discovered evidence. Specifically, he argued that after the trial, he discovered that Amy Cole had lied in her testimony and that jurors had learned about his potential punishments during jury deliberations.

At the evidentiary hearing, the petitioner's trial attorney testified that he had been practicing law since 1992 and had tried about sixty cases at the time of the hearing. The defense strategy in the this case was to show that the petitioner had an alibi for the dates and times of the three alleged offenses. At the preliminary hearing and at trial, the victim's friend, Amy Cole, testified that on September 23, 2000, she saw the victim leave Cole's house with the petitioner and that the petitioner brought the victim back to Cole's house the next morning. Cole had not come forward with information about the September 23 incident until several months after the incident. Counsel was unable to find Cole and interview her before trial, but he thoroughly cross-examined her at the preliminary hearing and at trial. Counsel believed that if Cole had not corroborated the victim's testimony or had been sufficiently impeached, the jury would have acquitted the petitioner of the September 23 offense. Counsel also represented the petitioner on direct appeal. While the petitioner's appeal was pending in this court, counsel learned that Cole did not have a birthday party on September 23, 2000. Counsel stated that this information would have been important at trial because it would have shown that Cole was lying about the case.

Counsel testified that after the trial, he also "kept hearing something about some of the jurors that may have received some information about the range of punishment or about the number of years while they were back in the jury room." Counsel had an investigator interview two jurors, and "these jurors indicated that they did receive some information about the time frames." Counsel believed this information was improper and could have affected the jury's verdict. He drafted two affidavits from the interviews, and the two jurors signed them.

The defense introduced the affidavits, which also had been attached to the petitioner's petition, into evidence. According to an affidavit signed by juror Jennifer Fain,

> [d]uring the discussion of the Jurors as to guilt or innocence, I did observe a sheet of paper that stated first offense, second offense, third

-3-

offense with the charges and number of years in jail time in parentheses. I do remember that the number was less than that of the second offense. I remembered that the second offense had 5-15 years and the third offense listed as 20-30 years. Based upon the piece of paper that I had seen, I believed that Haneline would only receive 5-15 years of jail time.

According to the second affidavit signed by juror Robert Stewart,

There was a discussion between most of the jurors about how much jail time Haneline would receive. I also noticed that there were papers in the jury room, but could not remember exactly what information was included in the papers. During the time that we decided this case, there was a discussion about first, second, and third offenses and that I voted to convict on the second offense which was less time than the third offense. I had thought that Mr. Haneline would only receive about 10 years at the most.

Counsel testified that he briefly considered filing a pretrial motion to sever the offenses but did not because the dates of the offenses were close together, the offenses involved the same victim, and the offenses involved similar facts where "[s]he's making allegations that he's [coming] and picking her up in all three of these counts." When asked if he should have moved for a severance, counsel stated, "I don't know. . . . It had to be a tactical decision on my part." He stated that he had hoped the lack of evidence for the September 9 and 30 incidents "might have a spillover effect" on the September 23 incident and that "the jury perhaps might give [the petitioner] the benefit of the doubt." He acknowledged that evidence about the sex acts on September 9 and 30 was prejudicial but said, "I stand by my decision."

James Bowles, a private investigator for Delta Investigations, Inc., testified that he interviewed Amy Cole in Indiana in 2003. Cole told Bowles that she did not have a party on September 23. On cross-examination, Bowles acknowledged that Cold told him she was not changing her story in any other respects. Cole told Bowles that the petitioner picked up the victim at Cole's home and brought the victim back to the house later. According to Cole, the victim told her that the victim had sex with the petitioner. Bowles acknowledged that he audiotaped his interview with Cole.

Regarding the petitioner's ineffective assistance of counsel claim, the post-conviction court concluded that trial counsel was "zealous" and "vigorous" in his representation of the petitioner. The court concluded that counsel's decision not to file a motion to sever was a tactical decision based upon counsel's belief that "trying all three counts together could have resulted in an acquittal of all three." The court also concluded that even if counsel had filed the motion, the trial court would not have granted it. As to the discrepancy in Amy Cole's testimony, the court held that her admitting she did not have a party on September 23, 2000, was a "small variance" in the facts and

that she did not change her testimony in any material way. As to the jurors learning about possible punishments during deliberations, the court held that the juror's claims "are mysteries to the court since the jury was appropriately charged by the trial court that they would not consider punishment and the trial judge in this case did not send any material to the jury room suggesting any form of punishment whatsoever."[1] The court denied the petition for post-conviction and error coram nobis relief.

## II. Analysis

### A. Post-conviction Relief

The petitioner claims that he is entitled to post-conviction relief because his trial attorney failed to seek a severance of the offenses. The State contends that the petitioner is not entitled to relief because counsel's decision was tactical. The State also contends that the petitioner has failed to show he was prejudiced by counsel's decision because the jury acquitted him of two counts of child rape. We conclude that the petitioner is not entitled to relief.

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In the context

---

[1]The record reflects that same judge presided at the post-conviction evidentiary hearing and at trial.

of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

In this case, trial counsel testified that he reviewed the rule regarding severance and that he considered filing a pretrial motion to sever. However, he believed the weak evidence from the September 9 and 30 incidents would weaken the State's case for the September 23 incident and decided not to file the motion. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The post-conviction court concluded that counsel made an informed, tactical decision not to file a motion to sever, and we find no evidence to preponderate against the post-conviction court's finding.

## B. Writ of Error Coram Nobis

The petitioner also claims that he is entitled to error coram nobis relief based upon newly discovered evidence. Specifically, he contends that he learned after the trial that Amy Cole had "recanted her testimony in part on significant points" and that the jury had been improperly exposed to information about his potential punishments during deliberations.

Tennessee Code Annotated section 40-26-105 (2006) provides:

> (a) There is made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith.

> (b) The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the

defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

It is well-established that the writ of error coram nobis "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

Regarding the petitioner's claim that Amy Cole lied during her testimony, recanted testimony may be considered newly discovered evidence under certain circumstances. See Mixon, 983 S.W.2d at 672. This court has concluded that a trial court should only grant a writ of error coram nobis upon the basis of newly discovered recanted testimony if:

> (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

State v. Ratliff, 71 S.W.3d 291, 298 (Tenn. Crim. App. 2001) (citing Mixon, 983 S.W.2d at 673 n.17). The evidence at the evidentiary hearing established that although Amy Cole may not have had a party on September 23, she steadfastly maintained that she saw the victim leave with the petitioner, that the petitioner returned the victim to Cole's house later, and that the victim told Cole she had sex with the petitioner. The court concluded that Cole had not recanted her testimony or changed it in any material way. We agree and conclude that the court properly denied error coram nobis relief on this issue.

As to the petitioner's claim that jurors were improperly exposed to information about his potential punishments, we note that the petitioner raises this issue in his appellate brief as an issue for post-conviction relief. However, he initially raised the issue as part of his petition for writ of error coram nobis, and the post-conviction court considered the issue as a claim for error coram nobis relief. Therefore, we will also address the issue as a claim for error coram nobis relief.

Trial counsel testified at the evidentiary hearing that he learned after the trial that some of the jurors may have received information about the range or length of the petitioner's punishment during deliberations. The defense introduced two juror affidavits into evidence. However, the two jurors did not testify at the hearing, and "'[t]o grant relief on affidavits only would deny the opposing party an opportunity to test the accuracy or veracity of the information contained therein by

confrontation or by evidence contrary to this assertion.'" Hart, 911 S.W.2d at 375 n.3 (quoting Hicks v. State, 571 S.W.2d 849, 852 (Tenn. Crim. App. 1978)). Moreover, the post-conviction court obviously did not believe the affidavits, stating that they were "mysteries" and that the jury had been correctly charged. "In exercising its discretion, the trial court must determine the credibility of the witnesses who testify in support of the accused's error coram nobis application." Hart, 911 S.W.2d at 375; see State v. Roberto Vasques, ___ S.W.3d ___, No. M2004-00166-SC-R11-CD, 2007 Tenn. LEXIS 243, at *35 (Nashville, Mar. 9, 2007) (stating that "in a coram nobis proceeding, the trial judge must first consider the newly discovered evidence and be 'reasonably well satisfied' with its veracity"). We hold that the court did not abuse its discretion by denying the petition for writ error coram nobis.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-8-